**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **NANCY FAULCONER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:12-CV-246 (MTT)** |
| ) | |
| **MORTGAGE ELECTRONIC** ) | |
| **REGISTRATION SYSTEMS, INC.,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ORDER

In this case, the Plaintiff seeks various forms of relief related to the Defendants'

involvement in efforts to foreclose on her property.  Although she has admittedly

defaulted on her payments, she contends foreclosure is unlawful because the

Defendants lack the legal authority to pursue enforcement or collection under the

promissory note and security deed at the center of this dispute.  Now before the Court is

the Defendants' motion for summary judgment.  (Doc. 30).  For the following reasons,

the motion is **GRANTED**.

## I.  FACTS

The Plaintiff purchased property at 952 Oconee Springs Road in Eatonton,

Georgia.  (Doc. 30-2, ¶ 1; Doc. 35 at 1).  To finance this purchase, she entered into a

loan agreement with Home America Mortgage, Inc.[1] on March 12, 2007, borrowing

---

[1] The Plaintiff contends there are two or more entities known as "Home America Mortgage, Inc.,"
one of which was administratively dissolved prior to the loan and another that was dissolved
after the loan.  She further argues that if the loan was issued by an administratively dissolved
corporation, the transaction was unlawful and unenforceable, and Home America did not have

$274,000 and executing a promissory note in which she agreed to repay that amount plus interest.  (Doc. 30-3 at 27-30; Doc. 50 at 15:12-16:1).  Simultaneously, she executed a security deed that secured to Home America repayment of the loan by granting legal title to the property to Defendant Mortgage Electronic Registration Systems, Inc. (MERS),[2] a corporation separate from Home America that served "solely as nominee for [Home America] and [Home America's] successors and assigns."  (Doc. 30-3 at 32, 34).  The deed expressly provided MERS, as well as its successors and assigns, the right to foreclose and sell the property on behalf of Home America or any subsequent owner of the note.[3]  (Doc. 30-3 at 34).

The Plaintiff's mortgage was then packaged into a mortgage-backed security. According to Roger Kistler, the Defendants' Rule 30(b)(6) representative, Home

---

lawful authority to assign the loan or security deed.  (Doc. 35 at 2).  According to the loan documents, the entity from which the Plaintiff obtained the loan had an address of 950 Grayson Highway, Lawrenceville, Georgia.  (Doc. 30-3 at 27).  This matches the address of the entity that, according to documents from the Secretary of State's website submitted by the Plaintiff, was not dissolved until 2011, well after the loan was made.  (Doc. 35-1 at 3).  Accordingly, there is no evidence the Plaintiff did business with a dissolved entity.

[2] The Plaintiff argues that Home America was not a member of MERS and had no relationship to MERS, and therefore MERS could not be Home America's nominee.  (Doc. 35 at 3).  This does not follow, however, as the Security Deed expressly names MERS as nominee for Home America.

[3] MERS operates an online system that tracks the beneficiaries and servicers of secured loans like the one in this case.  (Doc. 51 at 16:4-10).  It also acts as nominee on behalf of the lender, the lender's successors, or the lender's assigns by holding legal title to the collateral property. That is, MERS continues to hold the security deed while rights under the promissory note are transferred among companies.  (Doc. 51 at 16:22-17:5).  Rarely does MERS receive an assignment of the note itself; thus, the note and deed are technically held by different entities. (Doc. 51 at 30:24-31:6).  When a lender – the beneficial owner of the security deed – assigns the note to another company, it registers the transfer in MERS' online system but typically does not record the assignment on paper.  (Doc. 51 at 17:13-19:18).  Assignments are not recorded until a loan has gone into default or bankruptcy.  (Doc. 51 at 26:22-27:3).

America initially assigned the note to Taylor, Bean, Whitaker Mortgage Corp.[4]  (Doc. 51 at 31:7-32:4).  Defendant U.S. Bank National Association, acting as Trustee for TBW Mortgage-Backed Trust Series 2007-2 and TBW Mortgage Pass-Through Certificates, Series 2007-2, then acquired the promissory note and security deed through a pooling and servicing agreement executed May 1, 2007.[5]  (Doc. 51 at 41:2-4, 11-13, 70:2-17; Doc. 59-1).  The assignment was registered in the MERS system on June 1, and Taylor Bean remained, initially, the servicer for the loan.  (Doc. 51 at 72:12-75:3; Doc. 51-1 at 151; Doc. 59-1 at 2, 51).  U.S. Bank, acting as Trustee, currently owns the note and deed.  (Doc. 51 at 40:20-23, 41:8-10).

On November 2, 2008, the Plaintiff sent an "Involuntary Inability to Pay" worksheet to Taylor Bean indicating she was unable to make her loan payments.  (Doc. 30-2, ¶ 9; Doc. 35 at 7-8; Doc. 51-1 at 30-32).  Taylor Bean began foreclosure proceedings against her in March 2009.  (Doc. 30-2, ¶ 10, Doc. 35 at 8).  The Plaintiff sent another "Involuntary Inability to Pay" worksheet to Taylor Bean on April 16, and instead of foreclosing, Taylor Bean allowed the Plaintiff to pursue a forbearance plan.  (Doc. 30-2, ¶¶ 11-12; Doc. 35 at 9; Doc. 51-1 at 34-36).  Taylor Bean sent the Plaintiff two copies of the plan on May 21 for her to execute.  (Doc. 30-2, ¶ 12; Doc. 35 at 9; Doc. 51-1 at 38-39).  The plan required the Plaintiff to make a $5,000 payment by May 27 and notified the Plaintiff that Taylor Bean could terminate the plan at any time and continue with the foreclosure process.  (Doc. 30-2, ¶ 13; Doc. 35 at 9-10; Doc. 51-1 at

---

[4] The exact date of this transfer is not clear.  The Defendants' statement of material facts claims this assignment also occurred on March 12, 2007, but the deposition testimony cited in support of this fact does not refer to any specific date.  (Doc. 30-2, ¶ 5).

[5] The Plaintiff disputes the validity of these assignments.

38-39).  The Plaintiff did not make the $5,000 payment.  (Doc. 30-2, ¶ 14; Doc. 35 at 10; Doc. 50 at 27:11-17).

In the fall of 2009, Taylor Bean declared bankruptcy, and servicing rights for the loan were transferred to American Home Mortgage Servicing, Inc., now known as Defendant Homeward Residential, Inc. ("Residential").[6]  (Doc. 35-5; Doc. 51 at 70:18-71:2).  On November 24, the Plaintiff sent to Residential a "Financial Analysis for Loss Mitigation Workout," a form describing her present financial condition for the purpose of requesting assistance from Residential under its loss mitigation program.[7]  (Doc. 30-2, ¶ 16; Doc. 35 at 11; Doc. 51-1 at 48-49).  On January 20, 2010, Residential sent the Plaintiff a letter notifying her of the Home Affordable Modification Program ("HAMP").  (Doc. 30-2, ¶ 18; Doc. 35 at 12; Doc. 51-1 at 64).  The parties continued to correspond for several months regarding this loan modification program, and in July Residential instructed the Plaintiff to make three trial payments of $1,431.27, after which her mortgage would be permanently modified.  (Doc. 30-2, ¶¶ 19-22; Doc. 35 at 12-13; Doc. 51-1 at 51-53, 68-74).  The Plaintiff made the first two payments but failed to make the third.  (Doc. 30-2, ¶ 23; Doc. 35 at 14; Doc. 50 at 47:11-13, 115:13-16).  On December 15, 2010, Residential sent the Plaintiff a letter notifying her she was ineligible for HAMP modification because she had not made all of the required trial payments.  (Doc. 30-2, ¶ 24; Doc. 35 at 14; Doc. 51-1 at 86-90).

---

[6] In their statement of material facts, the Defendants claim the transfer occurred November 4, 2009.  However, the deposition testimony they cite in support of this proposition is discussion of an August letter of understanding outlining the transfer of servicing rights from Taylor Bean to Residential.  It is unclear where the November date comes from.  (Doc. 30-2, ¶ 8; Doc. 35-5).

[7] The Plaintiff admits partially filling out and signing the form.  However, she suggests somebody else filled in the numbers.  (Doc. 35 at 11; Doc. 50 at 38:14-39:6).

Even so, the Plaintiff continued to seek a loan modification, and continued to correspond with Residential about this for the next nine months.[8]  Finally, on September 1, 2011, the Plaintiff executed a loan modification agreement with Residential.  She agreed her new principal balance was $320,889.37, and her new monthly payment would total $2,454.78.  (Doc. 51-1 at 173-176).  The Plaintiff claims she signed the agreement under duress because she was told if she did not sign the document, which increased both her principal balance and monthly payment, she would be evicted.  (Doc. 50 at 115:17-117:7).  After making the first two payments under the modification, she missed subsequent payments.  (Doc. 51-1 at 156-157).  The modified loan went into default on December 1, 2011.  (Doc. 51-1 at 205).

On January 17, 2012, Residential sent the Plaintiff a letter informing her she was in default and needed to pay $6,049.29, the sum of payments due since defaulting.  (Doc. 51-1 at 205).  In response, the Plaintiff on January 30 sent to Residential a written demand for validation of the debt.  (Doc. 51-1 at 192).  On February 24,[9] the Plaintiff

---

[8] However, the Defendants contend she never supplied the information necessary to proceed with a modification, despite repeated requests.  The Plaintiff says the Defendants simply were not happy with the information she sent.  (Doc. 30-2, ¶¶ 25-27; Doc. 35 at 14-15; Doc. 51-1 at 105-106).  On March 29, 2011, Residential sent the Plaintiff a letter stating her loan modification request was being denied because she had not been in contact and because the qualification requirements had not been met.  The Plaintiff does not recall receiving this or several other documents.  (Doc. 30-2, ¶ 28; Doc. 35 at 16; Doc. 50 at 73:4-15, 75:4-5; Doc. 51-1 at 105-114, 121-126).  She further contends she was discussing the loan modification with a Residential representative during this time and was told the modification was in process.  (Doc. 35 at 16-17; Doc. 50 at 79:4-13).  On July 29, 2011, the Plaintiff sent to Residential a "hardship letter" requesting that her loan be modified.  (Doc. 51-1 at 139).

[9] The letter is dated December 24, 2012 but was actually sent in February 2012.  The Plaintiff says she inadvertently left the December date from an earlier draft.  (Doc. 50 at 104:21-105:8).  In her testimony, she also appears to confuse the year with 2013.  However, it is clear from the evidence, and the Plaintiff admits in her response to the Defendants' statement of material facts, that the letter was sent February 24, 2012.

sent Residential a $1,000 money order and a letter stating that if she did not receive a written dispute in 10 days, she "would accept [Residential's] tacit agreement" that the money order constituted her final payment, accepted in full accord and satisfaction for the discharge of her loan.  (Doc. 51 at 85:11-21; Doc. 51-1 at 180).  On February 29, Residential sent a second letter informing the Plaintiff of her default and indicating that Residential was now trying to collect a debt of $7,736.41 in missed payments.  (Doc. 51-1 at 209).  The Plaintiff in turn sent a second demand for validation of the debt on March 5 and a third demand on March 26.  (Doc. 51-1 at 196, 199).

On April 11, Residential responded to the Plaintiff's demand for debt validation, mailing to her a copy of the payment history,[10] the note, and the security deed.  (Doc. 51-1 at 182-190).  On April 20, the law firm Shapiro & Swertfeger, LLP, on behalf of Residential as servicer for U.S. Bank, the owner of the note and security deed, sent written notice to the Plaintiff that her debt had been accelerated.  The total amount required to pay off the loan was $331,492.93.  The letter included a Notice of Sale Under Power, with a foreclosure sale scheduled for June 5, 2012.  (Doc. 51-1 at 213-216).  The Plaintiff filed suit in the Superior Court of Putnam County on May 29, 2012.  (Doc. 1-1).  Shortly thereafter, the Defendants voluntarily canceled the foreclosure proceedings.  (Doc. 25, ¶ 49).  The Plaintiff admits she has not made payments as scheduled under the note and security deed; the Defendants contend she has not made a full monthly payment since 2008.  (Doc. 30-2, ¶ 48; Doc. 35 at 27).  Further, regardless of what she was told by Residential, Taylor Bean, or other parties involved,

---

[10] The Plaintiff contends the payment history she was provided was incomplete.

the Plaintiff concedes she would not have been able to make the monthly payments on the loan.  (Doc. 50 at 121:17-122:12).

The Defendants removed the case to this Court on June 29, 2012.  (Doc. 1).  The Plaintiff amended her Complaint in May 2013.  (Doc. 25).  She seeks injunctive relief barring the Defendants from foreclosing on her property (Doc. 25, ¶¶ 48-51); rescission and cancellation of the security deed and note or a declaration that the loan has been satisfied and paid in full (Doc. 25, ¶¶ 52-56); damages for the Defendants' alleged violations of the Fair Debt Collection Practices Act ("FDCPA") (Doc. 25, ¶¶ 57-59); and a finding of wrongful foreclosure that would set aside any future foreclosure on her property as unlawful.[11]  (Doc. 25, ¶¶ 60-62).

## II.  DISCUSSION

### A.  Summary judgment standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  The movant must cite "to particular parts of materials in the record, including depositions,

---

[11] In her response to the Defendants' motion for summary judgment, the Plaintiff for the first time raises issues related to the Truth in Lending Act and Georgia's intangible tax on security deeds. (Doc. 33).  It is not clear whether she is merely discussing these issues within the context of existing claims or whether she thinks she is presenting new claims.  But to whatever extent the Plaintiff is attempting to present new claims, she has not done so because she has not amended her complaint for that purpose. Therefore, there are no Truth in Lending Act or intangible tax claims before the Court.

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing…relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The non-moving party does not satisfy its burden "if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor."  *Anderson*, 477 U.S. at 255.

## B.  The Defendants' authority to foreclose

All of the Plaintiff's claims for relief, with the exception of her claim pursuant to the FDCPA, are based on her arguments that (i) the Defendants are not the real parties in interest due to invalid or ineffective assignments, (ii) the Defendants made fraudulent statements regarding her loan modification options, and (iii) her $1,000 payment operated as an accord and satisfaction of the loan.

### 1.  The assignments of the promissory note and security deed

Because the Plaintiff was not a party to any subsequent assignment of the security deed or note following her execution of those documents, she does not have standing to challenge their validity.  *See Montgomery v. Bank of Am.,* 321 Ga. App. 343,

346, 740 S.E.2d 434, 438 (2013); *Woodberry v. Bank of Am., N.A.,* 2012 WL 113658 at

*2 (N.D.Ga.) (citing *Haldi v. Piedmont Nephrology Assocs.,* 283 Ga. App. 321, 322, 641,

641 S.E.2d 298 (2007)).  In *Montgomery,* the Georgia Court of Appeals explains that an

assignment of a security deed is a contract between the assignor and the assignee and

that the proper party to bring a claim challenging its validity is the other party to the

assignment.  321 Ga. App at 346, 710 S.E.2d at 438; *see also Edward v. BAC Home

Loans Servicing, L.P.,* 534 F. App'x 888, 891 (11th Cir. 2013) (applying *Montgomery*

and holding borrowers lacked standing to challenge the transfer of their security deed).

The Plaintiff recognizes this authority, but she argues these cases should be overturned

because they are inconsistent with the concept of privity of contract.  (Doc. 33 at 28).

That is an argument for Georgia's appellate courts, not for a federal district court.  The

Plaintiff further asserts these standing principles should not apply because her claim "is

not predicated upon standing to contest the validity of assignment" but is "predicated

upon the fact that there is no evidence of any assignment to contest."  (Doc. 33 at 29).

But this argument is, at bottom, still an argument as to whether the note and deed were

properly assigned to U.S. Bank, and it is an argument that she does not have standing

to make.[12]

---

[12] Plus, her claim that there is no evidence of any assignment to contest is simply not true.  The
Defendants have submitted the pooling and servicing agreement which, by its terms and by
Kistler's sworn testimony, indicates U.S. Bank acquired the note and security deed.  (Doc. 59-
1).  They also have submitted printouts of MERS's electronic records showing U.S. Bank as
owner of the beneficial rights under the note and the intervening transfers.  That the transfer of
these rights is recorded electronically does not evidence nonexistent assignments.  Indeed, as
courts have recognized, MERS's precise role is to act as a conduit for electronic transfers of
mortgage loans.  *Dunn v. BAC Home Loan Servs., L.P.*, 2013 WL 1755808, at * 2 (N.D. Ga.);
*Taylor, Bean & Whitaker Mortg. Corp. v. Brown*, 276 Ga. 848, 849 n.1, 583 S.E.2d 844, 845 n.1
(2003).  Paper assignments need be filed in the appropriate superior court only sometime
before the foreclosure sale takes place, so the lack of such filings at this point is not evidence

Consequently, the Plaintiff cannot obtain relief based on her claim that the Defendants are not the real parties in interest due to invalid or ineffective assignments.

### 2. The allegedly fraudulent statements made by Residential[13]

Under Georgia law, "fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by the plaintiff, and damage to the plaintiff." *Irving v. Bank of Am.*, 497 F. App'x 928, 930 (11th Cir. 2012) (quoting *Baxter v. Fairfield Fin. Servs., Inc.*, 307 Ga. App. 286, 704 S.E.2d 423, 429 (2010)) (internal quotation marks omitted). Fraud allegations must be pled with particularity. Fed. R. Civ. P. 9(b).

In her complaint, the Plaintiff contends that as early as 2008 or 2009 she was told she would qualify for a loan modification that would reduce her principal balance and monthly payment. (Doc. 25, ¶¶ 27, 32). She also alleges she was told that before she could qualify for a loan modification, her loan had to be more than 90 days in arrears. (Doc. 25, ¶ 31). Based on these statements, the Plaintiff claims she allowed her loan to go into default for more than 90 days so that she could apply for and obtain the modification as represented to her by Residential. (Doc. 25, ¶ 33). The timing of this is not very clear.[14] But she says she was damaged when she received the

---

the assignments are nonexistent. O.C.G.A. § 44-14-162(b); *Grant v. BAC Home Loans Servicing L.P.*, 2012 WL 887590, at *2-*3 (N.D. Ga.).

[13] The Plaintiff did not plead with particularity any fraud allegations against MERS or U.S. Bank.

[14] In this regard, the Plaintiff has not satisfied the rigorous pleading standard for fraud required by Fed. R. Civ. P. 9(b). That rule requires plaintiffs to set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the

September 2011 loan modification that increased her principal balance and monthly payments and assessed late fees and interest.[15]  (Doc. 25, ¶¶ 34, 36).

Despite these allegations, the Plaintiff has not cited any evidence indicating the statements were false, that the speakers knew they were false or intended to deceive her, or that her reliance on them caused her alleged damages.  As she admits, she was offered a loan modification in July 2010 in which her payments *were* lower than her original monthly payments.  The only reason she did not qualify for the permanent modification was because she failed to make the final payment during the trial period.  (Doc. 50 at 117:4-118:4).  Perhaps most significantly, the Plaintiff's testimony indicates that her alleged damages would have arisen even in the absence of the Defendants' statements.  Specifically, she concedes she did not have the money to make monthly payments on her loan and admits that she would not have been able to make the payments regardless of what she was told by Residential.  (Doc. 50 at 121:17-122:12).  Additionally, at the time she claims she was told she should allow her loan to go into default for more than 90 days, the Plaintiff was already behind on her payments, had already been disqualified from the July 2010 loan modification for not making all of the

---

fraud."  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (quoting *Tell v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)) (internal quotation marks omitted).  At a minimum, the Plaintiff has not shown or even alleged with particularity the time and place each statement was made.

[15] In her response to the Defendants' motion for summary judgment, the Plaintiff for the first time says she was also damaged by the Defendants' allegedly false statements because she gave up opportunities to refinance her loan elsewhere.  However, she did not plead these damages in her complaint so this claim is not properly before the Court.  Moreover, she has not cited evidence to support this argument beyond her broad testimony that she felt forced to enter the September 2011 loan modification because she had no other option and "at that point, [she] couldn't get a loan anywhere else."  (Doc. 50 at 116:15-117:1).

trial payments, knew she was behind on her payments, and knew that if she did not make her monthly payments the owner of the loan could foreclose on her property. (Doc. 50 at 118:5-121:13).  Further, when the statement was allegedly made, the Plaintiff understood she was already more than 90 days in arrears.  (Doc. 50 at 120:22-121:2).  Thus, any damages she allegedly suffered were prompted by her own action or inaction and were not caused by her reliance on statements made by Residential.

Accordingly, the Plaintiff has not provided evidence that would create a jury question as to a claim for fraud, so this cannot be a basis for any relief she seeks.

### 3.  The Plaintiff's purported accord and satisfaction

The $1,000 money order the Plaintiff mailed to Residential does not operate as an accord and satisfaction of her home loan.  Pursuant to Georgia statute,

> Acceptance by a creditor of a…money order marked "payment in full" or with language of equivalent condition, in an amount less than the total indebtedness, shall not constitute an accord and satisfaction unless: (1) A bona fide dispute or controversy exists as to the amount due; or (2) Such payment is made pursuant to an independent agreement between the creditor and debtor that such payment shall satisfy the debt.

O.C.G.A. § 13-4-103(b).  There is no evidence of an independent agreement between the Plaintiff and Defendants that the payment would satisfy her debt.  As to a bona fide dispute, there must have existed prior to the tender of the payment a "dispute by the debtor as to the correctness of the amount of the debt." *Rafizadeh v. KR Snellville, LLC*, 280 Ga. App. 613, 615, 634 S.E.2d 406, 409 (2006) (quoting *Kendrick v. Kalmanson*, 244 Ga. App. 363, 365, 534 S.E.2d 884 (2000)).  Both parties must have understood and been aware the dispute existed; the dispute cannot be confined to the mind of the sender of the payment.  *Id.* at 616, 634 S.E.2d at 409.  That is, like any

other contract, there must be "a meeting of the minds…[and] [w]here there is no agreement to settle all matters in dispute, no accord and satisfaction result." *Hosp. Auth. of Houston Cnty. v. Pyrotechnic Specialties, Inc.*, 263 Ga. App. 886, 888, 589 S.E.2d 644, 646 (2003).  Finally, an accord and satisfaction must be of some legal or equitable advantage to the creditor or it will not bar the creditor's legal rights under the original agreement.  O.C.G.A. § 13-4-102.

No accord and satisfaction occurred here because there was no pre-existing bona fide dispute by the Plaintiff as to the correctness of the amount of the debt she owed.  Even if she did believe, as she alleges, that there were disputes as to whom she owed the debt, as to whether she would be able to obtain a modification of her loan, or as to whether the Defendants were in compliance with the Truth in Lending Act or the FDCPA, there is no evidence that she ever notified the Defendants she was disputing the actual amount she owed under the September 2011 loan modification.  *See Rafizadeh*, 280 Ga. App. at 616, 634 S.E.2d at 409.  The Plaintiff concedes that prior to 2012 she did not send any letters disputing the amount she owed to the Defendants. (Doc. 50 at 103:25-104:16).

Nor does the Plaintiff's January 30, 2012 letter to Residential demanding validation of her loan dispute the amount owed.  The letter, apparently the only written notification in 2012 sent before her purported offer of accord and satisfaction, expressly states "that this is not refusal to pay." (Doc. 51-1 at 192).  Instead, the letter merely requests evidence proving she was liable for the account.  (Doc. 51-1 at 192).  If there was a dispute as to the correctness of the amount of the debt, it was confined entirely to the Plaintiff's mind.  Perhaps more notably, after the Plaintiff sent her $1,000 money

order, Residential responded five days later with a February 29 letter informing her she was in default and owed more than $7,000 to bring her loan current.  (Doc. 51-1 at 209). Clearly, Residential did not view the $1,000 money order as anything other than a partial payment toward the Plaintiff's debt.  There was no meeting of the minds that Residential was accepting the money order as final payment.  Moreover, even if the Plaintiff's conditions as to her money order had any effect, Residential's default notice was sufficient to comply with the Plaintiff's demand that it respond within 10 days to avoid acceptance of the money order as final payment.  (Doc. 51-1 at 209).

Finally, the payment of $1,000 to satisfy a debt of more than $330,000 cannot be seen as any sort of legal or equitable advantage to Residential, and therefore it does not bar the Defendants' rights under the loan documents.  "An accord and satisfaction must be supported by consideration…and [a]n agreement on the part of one to do what he is already legally bound to do is not a sufficient consideration for the promise of another."  *Brewer v. Trust Co. Bank*, 205 Ga. App. 891, 892, 424 S.E.2d 74, 76 (1992) (quoting *Barnes v. Reliable Tractor Co.*, 117 Ga. App. 777, 778, 161 S.E.2d 918 (1968)) (citation and internal quotation marks omitted).  Because the Plaintiff was already legally obligated to make a set amount of payments under the terms of the promissory note and modified loan that far exceeded the value of the money order, there can be no accord and satisfaction in this case even if she submitted the money order on the express condition that it extinguish the remaining debt.  *See id.*

Consequently, the Plaintiff's payment of the $1,000 money order does not operate as an accord and satisfaction for the discharge of the money she owes and does not bar the Defendants from exercising the right to foreclose.

### C. The Defendants' alleged violation of the Fair Debt Collection Practices Act

The Plaintiff contends the Defendants, Residential specifically, violated 15 U.S.C. § 1692g(b) of the FDCPA by failing to give required notices and failing to provide validation or verification of the loan.[16]  However, the Plaintiff has not created a genuine dispute as to whether the FDCPA applies to the Defendants because there is not any evidence that they are "debt collectors" under the act.

A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218 (11th Cir. 2012) (quoting 15 U.S.C. § 1692a(6)). Residential seems to suggest that because it is a mortgage servicer it cannot be a "debt collector" as a matter of law.  This is true "as long as the debt was not in default at the time it was assigned."  *Duncan v. CitiMortgage, Inc.*, 2014 WL 172228, at *13 (N.D. Ga.); *see also* 15 U.S.C. § 1692a(6)(F)(iii); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).  There is evidence that, at the time the debt was assigned to Residential in the fall of 2009, the loan was in default, as Taylor Bean had initiated foreclosure proceedings earlier that year.  On the other hand, the Plaintiff later executed

---

[16] The Plaintiff asserts her claim against the Defendants generally.  However, the substance of her complaint relates to validation she requested from Residential specifically.  The Plaintiff's FDCPA claim does not lie against the other Defendants because, as best can be determined from the evidence, she did not send them letters asking for validation of her loan.  In any event, those Defendants are not "debt collectors" under the FDCPA for the same reason Residential is not.

a loan modification with Residential in which she agreed to a new principal balance. She made two payments on that loan before it entered default. Authority in the Seventh Circuit suggests, for purposes of deciding whether Residential is a debt collector under the FDCPA, that this loan modification may serve as the starting point for determining when the loan entered default rather than its status at the time it was first assigned. *See Baily v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388 (7th Cir. 1998).

However, the Court need not resolve this specific point because it is satisfied the FDCPA does not apply for another reason – specifically, the Plaintiff has put forward no evidence that the principal purpose of Residential's business is the collection of debts, and she has not shown Residential regularly attempts to collect the debts owed to someone else. The Plaintiff concedes she "does not know what [Residential's] 'job' is." (Doc. 35 at 28). The evidence suggests Residential's principal business is the servicing of mortgages, which would make it "responsible for the day-to-day transactions against the set of loans, collection of the payments, payment of taxes and insurance, [and] correspondence with the borrowers if there are any issues that need to be resolved." (Doc. 51 at 67:9-13). Thus, there is an absence of evidence indicating Residential is primarily engaged in the business of collecting debts.

At best, the Plaintiff has provided evidence only that Residential is trying to collect a debt in this one particular case before the Court. But "it would be unreasonable for the Court to infer that [the Defendant] operates a business whose principal purpose is collecting debts on the basis of the one collection effort alleged here." *Barber v. Rubin Lublin, LLC*, 2013 WL 6795158, at *9 (N.D. Ga.) (quoting *Beckles v. Aldridge Connors, LLP*, 2013 WL 5355481, at *5 (N.D. Ga.)) (internal

- 16 -

quotation marks omitted).  *Cf. Reese*, 678 F.3d at 1218 (plaintiff's allegation that the defendant had sent debt collection notices to more than 500 people during the previous year was sufficient to show regular debt collection activity); *Scott v. Jones*, 964 F.2d 314, 316 (4th Cir. 1992) (affirming district court's conclusion that the "principal purpose" of a law firm's business was the collection of debts where deposition testimony revealed roughly 80 percent of its fees came from such activity).  Additionally, it is largely inconsequential that Residential may have referred to itself as seeking to collect a debt in letters it sent to the Plaintiff.  The relevant test is whether an entity is a debt collector under the statutory definition of the FDCPA, "not whether the entity has ever stated in a document that it is a debt collector."  *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1249 (N.D. Ala. 2013).

Accordingly, because the Plaintiff has not shown there is a genuine dispute that the Defendants are "debt collectors" pursuant to the FDCPA, she cannot assert any claims against them under the FDCPA.

### III. CONCLUSION

For the foregoing reasons, the Plaintiff does not have standing to contest the validity of assignments of her note or security deed, she has not put forward sufficient evidence to create a jury issue as to fraud, and her $1,000 money order could not as a matter of law have served as an accord and satisfaction of her loan debt.  Therefore, she is not entitled to any of the legal or equitable relief she seeks for the potential foreclosure on the property.  Further, the Plaintiff has not produced evidence from which a jury could conclude the Defendants are "debt collectors," so her FDCPA claim must also fail.

Accordingly, the Defendants are entitled to judgment as a matter of law, and their motion for summary judgment (Doc. 30) is **GRANTED**.

**SO ORDERED**, this 13th day of February, 2014.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT